**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | | |
|---|---|---|
| 3M COMPANY, | : | |
| | : | |
| Plaintiff, | : | Case No.: _____ |
| | : | |
| v. | : | Judge _____ |
| | : | |
| DRESIDE, NAVITELIA INDUSTRIES INC. | : | Magistrate Judge _____ |
| | : | |
| Defendants. | : | **Jury Demand Endorsed Herein** |
| | : | |
| | : | |

**COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF**

Plaintiff 3M Company ("3M"), by and through its undersigned attorneys, and for its Complaint against Defendants Dreside and Navitelia Industries Inc., (collectively, "Defendants"), hereby alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for trademark counterfeiting, trademark infringement, unfair competition, and other Lanham Act violations—false endorsement, false association, and false designation of origin—arising from Defendants' ongoing misconduct using without authorization 3M's name and exploiting the COVID-19 pandemic for inappropriate commercial benefit.

2.      This lawsuit concerns Defendants' continued sale, and offer for sale, of counterfeit N95 respirator products falsely bearing 3M trademarks.  These counterfeit products are not manufactured or authorized by 3M and likely do not meet the N95 standard.  Accordingly, Defendants' sale of these counterfeit respirators is jeopardizing the health and safety of unsuspecting first responders and innocent customers who believe they are purchasing 3M-branded respirator products that meet the N95 standard.  As a result, this unlawful activity is causing 3M and the public at large irreparable harm.

3.     This action also concerns Defendants' unlawful efforts to deceive the public into believing Defendants have a business relationship or affiliation with 3M when in fact Defendants have never had any relationship with 3M.

4.     3M brings this action to help protect those on the frontlines of the fight against the pandemic and the public against Defendants' unlawful conduct and to protect the goodwill of its brand and products.

5.     Defendants have no prior or existing business relationship with 3M.  Indeed, 3M has never had any contact with Defendants prior to this action.

6.     Further, Defendants are not 3M authorized distributors of 3M-branded respirator products or any other 3M products.

7.     Defendants are deceiving potential customers to enter into sham transactions, namely the sale of inappropriately marked counterfeit 3M-branded respirator products— which are inferior in quality and which likely do not meet the N95 standard.

8.     Defendants are trading on 3M's name, branding, intellectual property, products, reputation for quality, and substantial goodwill after decades of 3M's investment to bring 3M-branded respirator products of the highest quality to users around the world.

9.     Defendants have knowingly created a fictitious association with 3M by utilizing 3M's branding, logo, and associated intellectual property to sell, and offer for sale, counterfeit respirator products bearing 3M trademarks.

10.     This conduct violates the Lanham Act for selling counterfeit goods, infringing and diluting 3M's trademarks, and engaging in unfair competition.

11.     Defendants also violate the State of Florida's laws against trademark infringement, false advertising, and deceptive trade practices, as well as the common law against passing off counterfeit respirator products bearing 3M trademarks as being affiliated or associated with 3M.

12.     3M also requests that the Court preliminarily and permanently enjoin Defendants from using 3M's name, logo, branding, all associated trademarks and other intellectual property, and from selling counterfeit 3M-branded respirator products bearing 3M trademarks or any other 3M products.

13.     Finally, 3M further requests the Court order Defendants to cease all false claims of affiliation with and representation of 3M, and to disgorge any profits that Defendants have made from these sham transactions.  3M will donate any monetary recovery in this action to COVID-19 charitable organizations.

## BACKGROUND

14.     Throughout its history, 3M has been a leader in innovation and developing healthcare and safety products for industry and consumers.  3M's personal protective equipment ("PPE")—and in particular 3M's N95 respirator products—are considered the gold standard for public health protection.

15.     Over the last hundred-plus years, 3M has invested hundreds of millions of dollars to advertise and promote its 3M-branded products to consumers throughout the world (including, without limitation, its 3M-branded respirator products).  During this time, 3M continuously used its 3M trademarks in commerce.

16.     Through this substantial investment and its extensive and continuous use of the famous 3M trademarks, 3M has established goodwill and an acclaimed reputation among the general public and healthcare and safety professionals for its high quality, safe and reliable products.  Consequently, the 3M brand has become synonymous with high quality.

17.     First responders, healthcare professionals, and other workers on the frontlines of the pandemic have come to depend on the quality and dependability that the 3M brand signifies.

18.     Due to the unique, continued threat posed by COVID-19, and 3M's ability to play a leading role in helping to protect public health, 3M has increased its production of respirator products to unprecedented levels.  As a result, 3M is increasing its capacity to produce 3M-branded N95 respirator products and other respirator products to an annual rate of 2 billion.  3M's N95 respirator products are critical to those individuals and groups on the front lines combating COVID-19.

19.     3M has not increased the price on its respirator products as a result of the COVID-19 pandemic.

20.     In light of substantial ongoing fraud involving 3M's PPE, 3M is working with law enforcement—including the U.S. Department of Justice, the Federal Bureau of Investigation, and federal and state Attorneys General—to help them investigate and prosecute offenders selling counterfeit goods and committing other misconduct.

21.     3M has also established the COVID-19 Fraud Hotline, so that the public can report cases of suspected fraud, price gouging, and counterfeiting in connection with PPE products to 3M.

22.     Including this action, 3M has filed over 20 lawsuits, and served dozens of cease and desist letters against numerous bad actors perpetrating fraud amidst the COVID-19 pandemic.

**THE PARTIES**

23.     Plaintiff 3M Company is a Delaware corporation, with a principal place of business and corporate headquarters located at 3M Center, St. Paul, Minnesota 55144.  3M is a diversified

technology company with a global presence and is among the leading manufacturers of products for many of the markets it serves, including PPE such as 3M-brand N95 respirator products.

24.     Upon Information and belief, Defendant Navitelia Industries Inc. is a Florida corporation with, upon information and belief, a principal place of business located at 13641 SW 260th Lane, Homestead, Florida

25.     Upon information and belief, Defendant Dreside is an entity of unknown provenance which is directly related to or operated by Defendant Navitelia Industries Inc and has a principal place of business located at 7398 S. Waterway Dr., Miami, Florida.

26.     Defendants' website – www.dreside.net  ("Defendant's Website") – states that Defendants operate a company that provide "high quality masks and supplies." and are a resource for PPE products and more.  Based on information obtained from various sources, Defendants are using the 3M Marks in commerce to advertise, promote, offer for sale, and sell 3M-branded N95 respirators, including, for example, by displaying photographs of counterfeit products bearing the 3M Marks in connection  with their efforts to promote and sell counterfeit 3M-branded N95 respirators..

## JURISDICTION AND VENUE

27.     The claims for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, trademark dilution, and false advertising, respectively, asserted in Counts I - V, infra, arise under the Trademark Act of 1946 (as amended; the "Lanham Act"), namely, 15 U.S.C. §§ 1051 et seq.  Accordingly, this Court has original and subject-matter jurisdiction over Counts I-V pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C § 1121(a).

28.     The claims for dilution, trademark infringement and unfair competition asserted in Counts VI - IX, infra, arise under Florida statutory and common law, and are so related to the

federal claims asserted in Counts I-V, infra, that they form part of the same case or controversy. Accordingly, this Court has supplemental jurisdiction over Counts VI-VIII pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

29.     Defendants have purposefully availed themselves of the privilege of transacting business in this District.  Defendants have also committed and intentionally directed tortious acts towards residents while in this District.   Defendants are Florida businesses (one a Florida corporation), with their principal places of business located in Homestead and Miami, Florida.

30.     A substantial part of the events giving rise to the claims asserted, infra, occurred in this District.  Therefore, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

31.     Defendants are subject to personal jurisdiction in this District.  Therefore, venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.     3M

32.     3M has grown from 1902 as a small-scale mining venture in Northern Minnesota to what it is today, namely: an industry-leading provider of scientific, technical, and marketing innovations throughout the world. Today, 3M's portfolio includes more than 60,000 goods and services, ranging from household and school supplies, to industrial and manufacturing materials, to medical supplies and equipment.  3M actively safeguards and protects its intellectual property. This includes maintaining substantial numbers of federal trademark registrations.

### A. The 3M Brand

33.     The 3M brand is associated with products for a wide range of medical supplies, devices, and safety products, to include respirator products such as the 3M-branded N95 respirator products.  As a result, 3M-branded products are highly visible throughout doctors' offices,

hospitals, and other medical facilities where patients and medical professionals rely upon the quality and effectiveness associated with the 3M brand.

**B. The Famous "3M" Marks**

34.     Over the past century, 3M has invested hundreds of millions of dollars in advertising and promoting its 3M-brand products to consumers throughout the world (including, without limitation, its 3M-brand N95 respirator) under the standard-character mark "3M" and the 3M logo shown below (together, the "3M Marks"):



35.     For decades, products offered under the 3M Marks have enjoyed enormous commercial success (including, without limitation, 3M-brand N95 respirators).  In 2020 alone, 3M's sales have been in the billions of dollars, much of which included products sold utilizing the 3M Marks.

36.     Over the same time period products offered under the 3M Marks have regularly been the subject of widespread, unsolicited media coverage and critical acclaim.

37.     Based on the foregoing, consumers associate the 3M Marks uniquely with 3M and recognize them as identifying 3M as the exclusive source of goods and services offered under the 3M Marks.  Based on the foregoing, the 3M Marks have also become famous among consumers throughout the United States.

38.     To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036,

which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration"). (*See* Exhibits A-C, attached hereto.)

39.     Each of the foregoing Registrations is valid, in effect, and on the Principal Trademark Register of the United States Patent and Trademark Office ("USPTO").

40.     Each of the foregoing Registrations is "incontestable" within the meaning of 15 U.S.C. § 1065.   Accordingly, each Registration constitutes conclusive evidence of: (i) 3M's ownership of the 3M Marks; (ii) the validity of the 3M Marks; (iii) the validity of the registration of the 3M Marks; and (iv) 3M's exclusive right to use the 3M Marks throughout the United States for, *inter alia*, respirators.

41.     3M's famous 3M Marks do more than identify 3M as the exclusive source of goods and services offered thereunder. The famous 3M Marks also signify to consumers that 3M-brand products offered under the 3M Marks are of the highest quality and adhere to the strictest quality-control standards. Now, more than ever, consumers rely on the famous 3M Marks' ability to signify that products offered under the 3M Marks are of the same high quality that consumers have come to expect of the 3M brand over the past century.

**C. 3M's Extensive Efforts to Combat the COVID-19 Pandemic**

42.     Medical professionals and first responders throughout the world are donning extensive PPE as they place their health and safety on the line in the battle against COVID-19. 3M is committed to getting personal protective equipment to healthcare workers and first responders.

43.     Legitimate 3M-branded N95 respirator products reduce exposure to potentially harmful airborne particles and contamination when worn and used appropriately.

44.     However, as demand has skyrocketed for PPE, and in particular 3M-branded N95 respirator products, in the midst of the pandemic, bad actors have sought to exploit the situation.

45.     To help protect the public and healthcare professionals—on the front lines of the COVID-19 pandemic—from trademark counterfeiting, misleading and substantially inferior PPE products, as well as to protect 3M's goodwill and reputation in its 3M brand, 3M is working diligently with law enforcement authorities, online e-commerce retailers, and others to combat unethical and unlawful business practices related to 3M-branded N95 respirator products.

46.     As shown below, additional examples of 3M's efforts to combat trademark counterfeiting, trademark infringement, and other unlawful activities during the COVID-19 pandemic include:

a.     3M posted on its website the U.S. per respirator, single case list price for the most common models of its 3M-branded N95 respirator products so that the public can identify and avoid inflated pricing.  *See* https://multimedia.3m.com/mws/media/1862179O/get-the-facts-n95-respirator-pricing.pdf:

3M has not changed the prices we charge for 3M respirators as a result of the COVID-19 outbreak.

**U.S. List Prices for Common N95 Respirator Models**

These list prices are per respirator.

These list prices represent suggested prices to end customers. 3M's prices to its authorized distributors are lower than these list prices.

An end customer's actual prices may be lower than these list prices, as negotiated between the end customer and its chosen distributor.

List prices for these models sold in Canada are similar on a currency-adjusted basis.

| Model | Type | List Price (USD) |
|---|---|---|
| 1804 | Surgical | $0.68 |
| 1804S | Surgical | $0.68 |
| 1860 | Surgical | $1.27 |
| 1860S | Surgical | $1.27 |
| 1870+ | Surgical | $1.78 |
| 8210 | Standard | $1.02 - $1.31 |
| 8210Plus | Standard | $1.18 - $1.50 |
| 8210V | Standard | $1.48 - $1.88 |
| 8110S | Standard | $1.08 - $1.37 |
| 8200 | Standard | $0.63 - $0.80 |
| 8511 | Standard | $2.45 - $3.11 |
| 9105 | Standard | $0.64 - $0.81 |
| 9105S | Standard | $0.64 - $0.81 |
| 9210+ | Standard | $1.40 - $1.78 |
| 9211+ | Standard | $2.68 - $3.40 |

      b.      3M created a form on its website as well as a telephone hotline that the public can use to report suspected fraud.  Additionally, 3M has created online resources to help spot incidents of price-gouging, identify counterfeiting, and ensure products are from 3M authorized distributors.



      c.      The 3M website further allows the public and interested parties to track 3M's enforcement activities against fraudulent activity in connection with 3M products, such as respirator products, during the COVID-19 pandemic.  *See* https://news.3m.com/English/press-releases/press-releases-details/2020/3M-Expands-Actions-Globally-to-Fight-COVID-Fraud-Counterfeiting-and-Price-gouging/default.aspx:

> At 3M, we are committed to help combat fraudulent activity in connection with 3M products and the COVID-19 pandemic.
>
> **3M Enforcement Activities**
>
> To help combat COVID-19 related fraud, 3M has established new 3M hotlines in the U.S. and around the world to help end-users and purchasers of 3M products identify authentic 3M respirators and ensure products are from 3M authorized distributors. 3M has not, and will not, raise prices for its respiratory protection products as a result of the COVID-19 pandemic. 3M has published the current U.S. list prices for many of the most common models of 3M N95 respirators to help customers identify and avoid inflated prices. We have also filed lawsuits in courts across the country against wrongdoers, terminated 3M distributors for engaging in price gouging or violating 3M policy, and collaborated with law enforcement and technology companies to combat fraud.
>
> See the actions 3M has taken to fight fraud, counterfeiting, and price gouging tied to the COVID-19 pandemic.
>
> **Stay current on 3M's enforcement efforts.**
>
> 3M ACTIONS BY THE NUMBERS (PDF, 111 KB)
>
> IN THE NEWS

      d.      To date, 3M has fielded and investigated more than 7,700 fraud reports globally, filed more than 20 lawsuits, and has been granted nine temporary restraining orders and

seven preliminary injunctions.  Additionally, over 13,500 false or deceptive social media posts, more than 11,500 fraudulent e-commerce offerings and at least 235 deceptive domain names have been removed.  *See* https://news.3m.com/English/press-releases/press-releases-details/2020/3M-Expands-Actions-Globally-to-Fight-COVID-Fraud-Counterfeiting-and-Price-gouging/default.aspx:



## II.    Defendants' Unlawful Conduct

47.    Even though 3M has been combatting counterfeiting and other unlawful activities seeking to exploit the demand for 3M-branded N95 respirator products during the pandemic, bad actors continue to take advantage of the public and unsuspecting users of respirator products. Defendants are engaged in such misconduct, which risks public health, impairs the supply chain supporting healthcare workers and others fighting the pandemic, and damages 3M's brand and goodwill.

48.    Defendants' misrepresentations and infringement of the 3M Trademarks are likely to confuse the public into falsely believing that Defendants are affiliated with 3M.  3M has gone to great lengths to make it known that 3M respirator products are only sold by 3M through its network    of    authorized    distributors    and    wholesalers.    *See,    e.g.,*

*https://multimedia.3m.com/mws/media/1860221O/covid-n95-selling-facts.pdf*.      By  offering substantial  quantities  of  purported  3M  N95  respirators  for  sale,  Defendants  fraudulently misrepresents that it has a legitimate source of supply for these products, thus leading unsuspecting purchasers  to  mistakenly  believe  or  assume  that  Defendants  are  authorized  by  or  otherwise associated with 3M.

49.     Defendants' website, which is primarily accessible at www.dreside.com, promotes a host of  purported  3M-branded  N95  respirators.      These  products  can  be  found  at https://dreside.com/collections/n95-respirators. Not only are multiple of the purported 3M-branded N95 respirators displayed at this site clearly counterfeit products, the products displayed at this site are being offered at prices significantly higher than 3M's published list prices as Defendants seek to unlawfully profit from a global health pandemic.

50.     On October 12, 2020, 3M received an inquiry from a consumer who had purchased purported 3M 1860 N95 respirators from Defendants through their website, asking whether Defendants are authorized distributors of 3M.   3M confirmed to the consumer that Defendants are not an authorized distributor of 3M and asked the consumer to provide photos of the product he purchased from Defendants, which the consumer provided.  Upon review of the photos supplied by the consumer, 3M determined that the 3M 1860 N95 respirators sold to the consumer by Defendants are counterfeit.  See, Affidavit of Michael Gannon attached as Exhibit D.

51.     On October 20, 2020, 3M employed a third party investigator to purchase products through Defendants' website.  *Id.*

52.     On October 26, 2020, the third party investigator employed by 3M received from Defendants products alleged to be 3M 1860, 3M 1860S, 3M 8210 N95 respirators.  *Id.*

53.     3M has determined that the 3M 1860S N95 respirators purchased by its third party investigator from Defendants are counterfeit.  *Id.*

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

*(Trademark Counterfeiting - 15 U.S.C. §§ 1114(1), 1116(d))*

54.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-57 of the Complaint as though set forth fully herein.

55.     Count I is a claim for trademark counterfeiting under U.S.C. §§ 1114(1), 1116(d).

56.     Defendants are using spurious designations that are identical to the 3M Trademarks.

57.     Defendants have been using these spurious designations identical to 3M Trademarks for the purpose of advertising, promoting, offering for sale, and selling counterfeit 3M-branded respirator products.

58.     Defendants' use of the spurious designations identical to 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing, and is likely to continue to cause, customer confusion, and/or deception about whether Defendants' products originate with, and/or are sponsored or approved by, and/or offered with authorization from, 3M.

59.     Based on 3M's longstanding and continuous use of its 3M Trademarks in United States commerce, as well as the federal registration of the 3M Trademarks that are now incontestable, Defendants had actual and constructive knowledge of 3M's superior rights in and to the 3M Trademarks when Defendants began using spurious designations identical to 3M Trademarks as part of its efforts to deceive consumers and the general public.

60.     Upon information and belief, Defendants adopted and used the 3M Trademarks in furtherance of Defendants' willful and deliberate scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Trademarks, including, without limitation, 3M-branded respirator products.

61.     Upon information and belief, Defendants have made, and may continue to make, ill-gotten profits and gain from its unauthorized use of the 3M Trademarks, to which Defendants are not entitled at law or in equity.

62.     Defendants' acts and conduct complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §§ 1114(1) and 1116(d).

63.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.  The damage suffered by 3M is exacerbated by the fact that Defendants are advertising and offering for sale counterfeit 3M-branded respirator products during a global pandemic when these products are playing a critical role in helping to protect public health.

64.     The acts of Defendants described herein have been willful and in bad faith, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

65.     3M has been damaged by the acts of Defendants in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

66.     3M requests the relief set forth in the Prayer for Relief below.

## SECOND CLAIM FOR RELIEF

*(Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))*
*(Infringement of the Federally Registered 3M Marks)*

67.     3M repeats and incorporates by reference the statements and allegations in paragraphs 1 - 72 of the Complaint as though set forth fully herein.

68.     3M is the exclusive owner of each of the federally registered 3M Marks.

69.     3M has the exclusive right to use each of the 3M Marks in United States commerce for, *inter alia*, advertising, promoting, offering for sale, and selling 3M-brand N95 respirators.

70.     3M's exclusive rights in and to each of the 3M Marks predate any rights that Defendants could establish in and to any mark that consists of "3M" in whole and/or in part.

71.     Each of the 3M Marks are fanciful and/or arbitrary when used for respirators and, therefore, are inherently distinctive.

72.     Each of the 3M Marks identify 3M as the exclusive source of products offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators) and, therefore, the 3M Marks have acquired distinctiveness.

73.     Defendants are using the 3M Marks in commerce to advertise, promote, offer for sale, and sell counterfeit 3M-branded N95 respirators.

74.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants are 3M, and/or whether Defendants are a licensee, authorized distributor, and/or affiliate of 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

75.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein, is causing, and is likely to continue cause, consumer confusion, mistake, and/or deception about whether Defendants and/or Defendants' products are affiliated, connected, and/or associated with 3M and/or products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

76.     Defendants' use of the 3M Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products, as alleged, herein is causing,

and is likely to continue to cause, consumer confusion, mistake, and/or deception about whether Defendants and/or Defendants' products originate with, and/or are sponsored or approved by, and/or offered with authorization from 3M.

77.    3M has not consented to the use of its famous 3M Marks by Defendants.

78.    Defendants had both actual and constructive knowledge of 3M's superior rights in its 3M Trademarks due to 3M's decades-long, continuous use of its 3M Trademarks in United States commerce, and 3M's federal registration of the 3M Trademarks.

79.    Defendants made use of the 3M Trademarks in furtherance of Defendants' willful scheme of trading upon the extensive customer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Trademarks, including 3M-branded respirator products.

80.    On information and belief, Defendants profited from its infringement of the 3M Trademarks.

81.    Defendants' acts and conduct described herein constitute trademark infringement in violation of 15 U.S.C. § 1114 (1)(a).

82.    3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless enjoined by the Court. The damage suffered by 3M is worsened due to Defendants' taking advantage of an unsuspecting public and medical health professionals during a global pandemic—when 3M's respirator products are critical to those frontline workers battling the COVID-19 pandemic. Defendants' misconduct directly creates a likelihood of confusion about 3M's role in the marketplace for respirator products.

83.    3M has been damaged by Defendants' misconduct in an amount to be proven at trial and donated to charitable COVID-19 relief efforts.

84.     3M requests the relief set forth in the Prayer for Relief below.

### THIRD CLAIM FOR RELIEF

*(Unfair Competition, False Endorsement, False Association, and False Designation of Origin
Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A))
(Use of the 3M Marks)*

85.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-90 as though set forth fully herein.

86.     Count III is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a)(1)(A).

87.     On information and belief, Defendants' misconduct described herein constitutes unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

88.     On information and belief, Defendants' use of 3M's famous name and 3M Trademarks to advertise, market, offer for sale, and/or sell counterfeit 3M-branded respirator products to customers, in general, and during a global pandemic such as COVID-19, specifically, also constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

89.     Defendants also falsely represented itself as affiliated, connected, endorsed by, and/or associated with 3M and/or products that 3M offers under its 3M Trademarks, including 3M-branded respirator products. Defendants sought to create the false impression that the products they offer for sale originate from, and/or are sponsored or approved by, and/or offered with authorization from 3M.

90.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless enjoined by the Court.

91.     3M has been damaged by the acts of Defendants in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

92.     3M requests the relief set forth in the Prayer for Relief below.

## FOURTH CLAIM FOR RELIEF

*(Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))*
*(Dilution of the Famous 3M Marks)*

93.     3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-98 of the Complaint as though set forth fully herein.

94.     Count IV is a claim for federal trademark dilution under 15 U.S.C. § 1125(c).

95.     The 3M Trademarks are famous.  The 3M Trademarks were famous before, during, and after the time Defendants began using the 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of products (including 3M-branded respirator products).

96.     Defendants' use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including 3M-branded respirator products) dilutes the distinctive quality of the famous 3M Trademarks, such that the famous 3M brand name and 3M Trademarks' established value and selling power will likely be diminished.

97.     Defendants' use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products (including, without limitation, 3M-branded respirator products) dilutes the distinctive quality of the famous 3M name and 3M Trademarks, such that the famous 3M Trademarks' ability to identify 3M as the exclusive source of products offered under the 3M Trademarks (including 3M-branded respirator products) will be diminished.

98.     Defendants' use of 3M's famous 3M Trademarks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of counterfeit products

(including 3M-branded respirator products), in general, and during a global pandemic such as COVID-19 specifically, dilutes the reputation of the famous 3M Trademarks, such that the famous 3M Trademarks' established ability to indicate the superior quality of Products offered under such marks (including 3M-branded respirator products), will be diminished.

99.     Defendants' misconduct also threatens to harm the reputation of the 3M Trademarks, constituting dilution by tarnishment of the famous 3M Trademarks.

100.    Defendants' acts and conduct complained of herein constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

101.    3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendants are opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect public health.

102.    3M has been damaged by the acts of Defendants in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

103.    3M requests the relief set forth in the Prayer for Relief below.

### FIFTH CLAIM FOR RELIEF

*(False Advertising Under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B))*
*(Defendants' Website, Sales Agreement, and Agent's Activities)*

104.    3M repeats and incorporates by reference the foregoing statements and allegations in paragraphs 1-109 of the Complaint as though set forth fully herein.

105.    Count V is a claim for false and deceptive advertising under 15 U.S.C. § 1125(a)(1)(B).

106.     Through their externally facing webpage, Defendants made statements to the general public—and medical health professionals—that contained false, misleading, and/or deceptive statements about the nature, characteristics, qualities, and/or geographic origin of Defendants and/or the products that Defendants allegedly had available for sale and constitute commercial advertising and/or commercial promotion.

107.     Defendants' acts and conduct complained of herein constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

108.     3M has suffered, and will continue to suffer, irreparable harm from Defendants' misconduct complained of herein, unless enjoined by the Court.  The damage suffered by 3M is exacerbated by the fact that Defendants are opportunistically operating its illegal scheme and misrepresentations about 3M-branded respirator products during a global pandemic when those products are in great demand to help protect the public health.

109.     3M has been damaged by the acts of Defendants in an amount to be proved at trial and donated to charitable COVID-19 relief efforts.

110.      3M requests the relief set forth in the Prayer for Relief below.

### SIXTH CLAIM FOR RELIEF

*(Dilution Under § 495.151, Florida Statutes)*

111.     3M realleges and incorporates the allegations in paragraphs 1 through 116 above as though fully set forth herein.

112.     3M brings this Count VI under Section 495.151, Florida Statutes.

113.     3M's 3M Marks are indisputably famous.

114.     3M's 3M Marks were famous at the time Defendants began using the 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including counterfeit 3M-brand N95 respirators.

115.     Defendants' use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including counterfeit 3M-brand N95 respirators, has diluted, and is likely to continue to dilute, the distinctive quality of the famous 3M Marks, such that the famous 3M Marks' established selling power and value will be severely diminished.

116.     Defendants' use of the famous 3M Marks in commerce on, for, and/or in connection with advertising, promoting, and/or offering for sale products, including counterfeit 3M- brand N95 respirators, in connection with Defendants' unlawful price gouging scheme during a global pandemic such as COVID-19, specifically, is likely to dilute the reputation of the famous 3M Marks, such that the famous 3M Marks' established ability to indicate the superior quality of Products offered under such Marks, including, without limitation, 3M's 3M-brand N95 respirators, will be severely diminished.

117.     Defendants' unauthorized and unlawful use of the 3M Marks violates Section 495.151, Florida Statutes.

118.     3M has no adequate remedy at law and asks for the relief set forth in the Prayer for Relief below.

## SEVENTH CLAIM FOR RELIEF

*(Trademark Infringement Under § 495.131, Florida Statutes)*

119.     3M realleges and incorporates the allegations in paragraphs 1 through 124 above as though fully set forth herein.

120.     3M brings this Count VII under Section 495.131, Florida Statutes.

121.     3M has the exclusive right to use the 3M Marks in commerce for, among other things, advertising, promoting, offering for sale, and selling 3M's 3M-brand products, including N95 respirators.

122.     Defendants are unlawfully using the 3M Marks in commerce to advertise, promote, offer for sale, and sell counterfeit 3M-brand N95 respirators.

123.     3M has not authorized Defendants to use its famous 3M Marks.

124.    Based on 3M's longstanding and continuous use of its 3M Marks in United States commerce, as well as the federal registration of 3M's 3M Marks, Defendants had actual and constructive knowledge of 3M's superior rights in and to the 3M Marks when Defendants began using the 3M Marks as part of its bad-faith scheme to confuse and deceive consumers, as alleged, herein.

125.    Upon information and belief, Defendants adopted and uses the 3M Marks in furtherance of Defendants' willful, deliberate, and bad-faith scheme of exploiting the extensive consumer goodwill, reputation, fame, and commercial success of products that 3M offers under its 3M Marks, including, without limitation, 3M-brand N95 respirators.

126.    Upon information and belief, Defendants have made, and will continue to make, substantial profits and gain from its unauthorized use of 3M's 3M Marks, to which Defendants are not entitled at law or in equity.

127.    3M has suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law. The damage suffered by 3M is exacerbated by the fact that Defendants are advertising and offering for sale counterfeit 3M-branded N95 respirator masks at exorbitantly inflated prices during a global pandemic when 3M's products are necessary to protect public health. Such conduct has inspired intense public criticism of the manner in which 3M's respirator masks are being distributed and sold during the COVID-19 pandemic and significant confusion about 3M's role in the marketplace for masks that are essential to safeguarding public health. Whereas 3M's corporate values and brand image center around the application of science to improve lives, Defendants' conduct imminently and irreparably harms 3M's 3M brand.

128.    3M has no adequate remedy at law and asks for the relief set forth in the Prayer for Relief below.

## EIGHTH CLAIM FOR RELIEF

### *(Unfair Competition Under Florida Common Law)*

129.     3M realleges and incorporates the allegations in paragraphs 1 through 135 above as though fully set forth herein.

130.     3M has the exclusive right to use the 3M Marks in commerce for, among other things, advertising, promoting, offering for sale, and selling 3M's 3M-brand products, including N95 respirators.

131.     Defendants' use of the 3M Marks for, among other things, advertising, promoting, offering for sale, and selling counterfeit 3M-brand N95 respirators is likely to confuse consumers, including government agencies, and mislead them into believing that Defendants are associated with 3M, are an authorized distributors for 3M, and/or have available for sale genuine 3M-brand products.

132.     3M has suffered, and will continue to suffer, irreparable harm as a direct and proximate result of Defendants' wrongful conduct.

133.     3M has no adequate remedy at all and asks for the relief set forth in the Prayer for Relief below.

WHEREFORE, 3M requests this Court enter judgment in its favor preliminarily and permanently enjoining Defendants' unlawful conduct, award damages and/or penalties, including attorneys' fees and costs, as permitted under the governing law, and award any other and further relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on Defendants' conduct complained of, herein, 3M asks that this Court:

A.     To enter an Order, finding in 3M's favor on each Claim for Relief asserted herein;

B.     Pursuant to 15 U.S.C. § 1116, the Florida statutes, and Florida common law:

1.     Preliminarily and permanently enjoining Defendants, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from

using the 3M Marks (or any other mark(s) confusingly similar thereto) for, on, and/or in connection with the manufacture, distribution, advertising, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, 3M-brand N95 respirators;

        2.     Preliminarily and permanently enjoining Defendants, its agents, servants, employees, officers and all persons and entities in active concert and participation with them from falsely representing itself as being a distributor, authorized retailer, and/or licensee of 3M and/or any of 3M's products (including, without limitation, 3M's 3M-brand N95 respirator) and/or otherwise falsely representing to have an association or affiliation with, sponsorship by, and/or connection with, 3M and/or any of 3M's products; and

        3.     Ordering Defendants to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction.

    C.     Pursuant to 15 U.S.C. § 1117:

        1.     Order Defendants to provide 3M with a full accounting of all manufacture, importation, purchase, distribution and sale of products under the 3M Marks (including, without limitation, 3M-brand N95 respirators), as well as all profits derived therefrom;

        2.     Order Defendants to pay to 3M—so as to be donated charitably pursuant to subpart I, infra—all of Defendants' profits derived from the sale of infringing and counterfeit goods offered under the 3M Marks (including, without limitation, 3M-brand N95 respirators);

        3.     Award 3M treble actual damages—so as to be donated charitably pursuant to subpart I, infra—in connection with Defendants' infringement and counterfeiting of the 3M Marks; or, in the alternative, statutory damages under U.S.C.A. 1117(a)(2) of up to $2,000,000 per type of goods sold for willful counterfeiting as determined by a jury;

       4.     Find that Defendants' acts and conduct complained of herein render this case "exceptional"; and

       5.     Award 3M—so as to be donated charitably pursuant to subpart I, infra—its costs and reasonable attorneys' fees incurred in this matter;

     D.     Pursuant to 15 U.S.C. § 1118, order the delivery to 3M by the Defendants within three (3) days of all unauthorized goods and materials within the possession, custody, and control of Defendants and Defendants' agents that bear, feature, and/or contain any copy or colorable imitation of the 3M Marks so that 3M can have them destroyed;

     E.     Award 3M pre-judgment and post-judgment interest against Defendants;

     F.     For any preliminary and permanent injunctive relief, that such relief extend to Defendants' agents, servants, employees, officers, and all persons and entities in active concert and participation with Defendants;

     G.     To order Defendants to file with the Court and serve upon 3M's counsel, within 30 days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

     H.     Award 3M such other relief that the Court deems just and equitable; and

RESPECTFULLY SUBMITTED, this the 30th day of October, 2020.

*Jason P. Mehta*

Jason Mehta (FB# 106110)
Bradley Arant Boult Cummings
LLP 100 North Tampa Street
Suite 2200
Tampa, FL 33602
Tel:  813-559-5500
Fax:  813-229-5946
jmehta@bradley.com

*Attorney for 3M Company*

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Exhibit A

Int. Cls.: 9 and 10

Prior U.S. Cls.: 21, 23, 26, 36, 38, 39 and 44

**United States Patent and Trademark Office**

Reg. No. 3,398,329

Registered Mar. 18, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# 3M

3M COMPANY (DELAWARE CORPORATION)
3M CENTER, 220-9E-01
2501 HUDSON ROAD
ST. PAUL, MN 55144

FOR: FULL LINE OF PARTICULATE, OZONE, GAS, VAPOR, CHEMICAL, BIOHAZARD AND OTHER RESPIRATORS, INCLUDING FILTERING FACE-PIECE RESPIRATORS AND ELASTOMERIC FACE-PIECE RESPIRATORS, OTHER THAN FOR ARTIFICIAL RESPIRATION; FULL LINE OF SELF-RESCUE AND PROTECTION APPARATUS, NAMELY, OXYGEN BREATHING UNITS, SUPPLIED-AIR RESPIRATORS, AND POWERED AIR-PURIFYING SYSTEMS (PAPRS) RESPIRATORS; CARTRIDGES, FILTERS, AIR TANKS AND OTHER COMPONENT PARTS FOR RESPIRATORS AND BREATHING UNITS; DUST MASKS; FULL LINE OF PROTECTIVE EYEWEAR, NAMELY, SAFETY GOGGLES, EYEGLASSES AND EYE SHIELDS; FACE-PROTECTION SHIELDS; EAR PLUGS AND EAR MUFFS TO ATTENUATE SOUND AND PROTECT HEARING; HARD HATS AND OTHER PROTECTIVE HELMETS; WELDING HELMETS; AIR MONITORING DEVICES AND SENSORS FOR MEASURING GASES AND VAPOR CONCENTRATION LEVELS; GAS DETECTORS FOR DETECTING THE PRESENCE OF CARBON MONOXIDE AND OTHER GASES; THERMAL-IMAGING CAMERAS FOR USE BY FIREFIGHTERS AND FOR SEARCH AND RESCUE; ENVIRONMENTAL SAMPLING AND TESTING INSTRUMENTS AND EQUIPMENT, NAMELY, ELECTRONIC LUMINOMETERS, AND RELATED SOFTWARE, DOCKING STATIONS AND BATTERIES, FOR DETECTING, MEASURING AND ANALYZING CHEMICALS, BIOLOGICAL SUBSTANCES, FOOD RESIDUES AND MICROBES; MICROBIOLOGICAL AND CONTAMINANT-TESTING INSTRUMENTS AND EQUIPMENT, AND SOFTWARE RELATED THERETO, FOR DETECTING, MEASURING AND ANALYZING BACTERIA, INCLUDING PATHOGENS SUCH SALMONELLA AND LISTERIA, ALLERGENS, TOXINS, VITAMINS,

ANTIBIOTICS, AND OTHER ORGANISMS AND SUBSTANCES; DIAGNOSTIC APPARATUS FOR TESTING FOOD; LABORATORY EQUIPMENT AND SUPPLIES, NAMELY, TEST TUBES, TEST TUBE CAPS, DIP STICKS, RACKS, MICROTITRE PLATES AND TRAYS; SECURITY SCANNERS AND READERS FOR USE IN READING PASSPORTS AND OTHER FORMS OF IDENTIFICATION; ANTI-THEFT AND LIBRARY MATERIAL CHECK-OUT SECURITY SYSTEMS; RADIO FREQUENCY IDENTIFICATION (RFID) TAGS AND READERS; COMPUTER SOFTWARE FOR SUPPLY CHAIN MANAGEMENT FROM SOURCE TO CONSUMPTION, NAMELY, FOR COLLECTING, STORING AND MANAGING DATA, AND REPORTING, EXECUTING AND TRACKING, IN CONNECTION WITH ENTERPRISE RESOURCE PLANNING, SUPPLIER ENABLEMENT, MANUFACTURING, INVENTORY CONTROL AND WAREHOUSING, ORDER FULFILLMENT, SHIPPING, TRANSPORTATION AND DELIVERY; COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT AND MEDICAL RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND MEDICAL IMAGING SCANNERS AND RELATED SOFTWARE FOR CAPTURING IMAGES OF THE MOUTH AND TEETH FOR USE IN DENTISTRY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

FOR: FULL LINE OF SURGICAL AND MEDICAL MASKS, RESPIRATORS AND FACE AND EYE SHIELDS FOR MEDICAL AND HEALTH-CARE RELATED PERSONNEL; FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS

AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTRO-ENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS; AUTOCLAVES FOR MEDICAL USE; ORTHODONTIC APPLIANCES; DENTAL APPARATUS, NAMELY, INTRA-ORAL LIGHT SYSTEMS FOR CURING DENTAL MATERIALS, CERAMIC USED IN MAKING DENTAL CROWNS, BRIDGES AND OTHER RESTORATIVES; DENTAL INSTRUMENTS AND KITS COMPRISED OF SUCH INSTRUMENTS, NAMELY, MANDRELS, BURS, DISCS, CUPS, WHEELS, POINTS, BRUSHES AND ABRASIVE STRIPS USED TO GRIND, POLISH OR FINISH DENTAL RESTORATIVES; DENTAL INSTRUMENTS, NAMELY, SCISSORS, CRIMPING PLIERS, CONTOURING PLIERS AND IMPRESSION TRAYS; ELECTRONIC MIXERS FOR DENTAL COMPOUNDS; APPLICATORS AND DISPENSERS FOR DENTAL PRIMERS, CEMENTS, ADHESIVES, IMPRESSION MATERIALS AND RESTORATIVE MATERIALS; GLASS-FIBER POSTS USED IN DENTAL RESTORATIVE PROCEDURES; AND DENTAL PROPHYLAXIS ANGLES AND DENTAL PROPHYLAXIS CUPS FOR USE IN CLEANING TEETH AND DENTAL HYGIENE PROCEDURES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,237,168, 2,793,534 AND OTHERS.

SER. NO. 77-257,496, FILED 8-16-2007.

TARAH HARDY, EXAMINING ATTORNEY

Exhibit B

**Int. Cls.: 1, 3, 5, 9, 10 and 28**

**Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52**

**United States Patent and Trademark Office**

Reg. No. 2,692,036
Registered Mar. 4, 2003

## TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANUFACTURING COMPANY (DELAWARE CORPORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICATOR STRIPS AND TAPE FOR USE WITH AUTOCLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; INDICATOR STRIPS FOR TESTING GLUTARALDEHYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDITIONS FOR USE IN SAFETY-MONITORING; INDICATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZATION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CONTAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZATION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRODUCTS, NAMELY, CLEANSERS, CREAMS, LOTIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRESSINGS, MEDICATED COMPRESSES, TRANSPARENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGICAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMICROBIAL SOLUTIONS; GAUZE; WOUND HEALING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SURGICAL DISINFECTANTS AND PREPPING SOLUTIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINES OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PA-

TIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,213,836, AND 1,234,260.

SER. NO. 76-137,885, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

Exhibit C

Int. Cls.: 1, 3, 5, 9, 10 and 28

Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52

**United States Patent and Trademark Office**

Reg. No. 2,793,534
Registered Dec. 16, 2003

## TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANUFACTURING COMPANY (DELAWARE CORPORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICATOR STRIPS AND TAPE FOR USE WITH AUTOCLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; INDICATOR STRIPS FOR TESTING GLUTARALDEHYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDITIONS FOR USE IN SAFETY-MONITORING; INDICATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZATION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CONTAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZATION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND

SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRODUCTS, NAMELY, CLEANSERS, CREAMS, LOTIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRESSINGS, MEDICATED COMPRESSES, TRANSPARENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGICAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMICROBIAL SOLUTIONS; GAUZE; WOUND HEALING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SURGICAL DISINFECTANTS AND PREPPING SOLUTIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS,

PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,234,260 AND OTHERS.

THE MATTER SHOWN IN BROKEN LINES INDICATES THE RELATIVE PLACEMENT OF THE MARK ON A TYPICAL PACKAGE FOR THE GOODS AND IS NOT CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 76-138,263, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

3M COMPANY,                              :
                                         :
                    Plaintiff,           :    Case No.: _____
                                         :
       v.                                :    Judge _____
                                         :
                                         :    Magistrate Judge _____
DRESIDE, NAVITELIA INDUSTRIES            :
                                         :    **Jury Demand Endorsed Herein**
INC.                                     :
                                         :
                    Defendants.          :

---

### DECLARATION OF MICHAEL L. GANNON

---

I, Michael L. Gannon, hereby declare and state as follows:

1. I am a resident of the State of Minnesota, over eighteen years of age, and if called to testify to the matters contained herein could do so competently and based upon my personal knowledge.

2. I am Senior Trademark Counsel for 3M Innovative Properties Company ("3M"). The information set forth herein is based on my personal knowledge obtained through the course of my duties at 3M. The information set forth herein is also based on my review of records, documents (including electronic records), and photographs maintained in the regular course of 3M's business, and the Complaint in this lawsuit.

3. I submit this declaration in support of 3M's request for a temporary restraining order, and preliminary injunction against Defendants Dreside and Navitelia Industries Inc. ("Defendants") in the above-captioned action.

4. For decades, 3M has been a leading provider of personal protective equipment for healthcare professionals, industry workers and the public. Indeed, 3M is a leading manufacturer of N95 respirators, and has sold N95 respirators in the United States under the 3M brand name for decades.

5. 3M has spent millions of dollars in advertising, marketing, and promoting goods and services under the 3M Marks. Goods sold under the 3M Marks, including 3M's N95 respirators, generate billions of dollars in annual revenue. The 3M Marks are recognized

and well-known in households around the U.S.  3M has been the exclusive source of goods and services offered under the 3M Marks for decades.

6.  Since the COVID-19 outbreak began, the public has become familiar with 3M as a manufacturer of the N95 respirators and other equipment essential to protecting healthcare personnel and workers from exposure to airborne particles, including viruses like COVID-19.

7.  Over the past century, 3M has invested hundreds of millions of dollars in advertising, promoting, offering for sale, and selling its vast array of goods and services under its standard-character mark "3M" and 3M design mark  (together, the "3M Marks").  During this period, 3M's goods and services offered under its 3M Marks have been the subject of widespread, unsolicited media coverage and critical acclaim.  Goods and services offered under 3M Marks also enjoy enormous commercial success, with annual revenues in the billions of dollars.

8.  To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration").

9.  Attached hereto as **Exhibit 1** is a true and correct copy of the '329 Registration.

10. Attached hereto as **Exhibit 2** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '329 Registration, which was issued by the United States Patent and Trademark Office (the "PTO") pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

11. Attached hereto as **Exhibit 3** is a true and correct copy of the '036 Registration.

12. Attached hereto as **Exhibit 4** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '036 Registration, which was issued by the United States Patent and Trademark Office (the "PTO") pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

13. Attached hereto as **Exhibit 5** is a true and correct copy of the '534 Registration.

14. Attached hereto as **Exhibit 6** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '534 Registration, which was issued by the PTO pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

15. On October 12, 2020, 3M received an inquiry from a consumer who had purchased purported 3M 1860 N95 respirators from Defendants through their website, asking whether

Defendants are authorized distributors of 3M. 3M confirmed to the consumer that Defendants are not an authorized distributor of 3M and asked the consumer to provide photos of the product he purchased from Defendants, which the consumer provided. Upon review of the photos supplied by the consumer, 3M determined that the 3M 1860 N95 respirators sold to the consumer by Defendants are counterfeit.

16. On October 20, 2020, 3M employed a third party investigator to purchase products through Defendants' website.

17. On October 26, 2020, the third party investigator employed by 3M received from Defendants products alleged to be 3M 1860, 3M 1860S, 3M 8210 N95 respirators.

18. 3M has determined that the 3M 1860S N95 respirators purchased by its third party investigator from Defendants are counterfeit.

19. Defendants are not, and have never been, an authorized distributor, vendor, or representative of 3M's products. Defendants also do not have, and have never had, an association or affiliation with 3M. 3M does not – and will not – condone individuals or entities deceptively trading off the fame and goodwill of the 3M name and marks for personal gain. This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic, which already has claimed more than 200,000 lives in the United States and more than a million lives worldwide.

20. Defendants' actions have caused irreparable harm to the 3M brand and have put the public at risk.

21. Accordingly, 3M commenced an action against Defendants on October 30, 2020, asserting claims under federal and Florida law for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, false advertising, and deceptive acts and business practices.

22. As set forth in 3M's Complaint, 3M can demonstrate that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.

23. The harm to 3M of denying 3M's request for injunctive relief outweighs the harm to the legitimate interests of Defendant.

24. It is my sincere belief based on my knowledge of the facts associated with Defendant's actions that Defendants will destroy, move, hide, or otherwise make the products inaccessible to the court, if 3M were to notify Defendants of the court proceedings.

I declare under penalty of perjury of the laws of the United States and the State of Florida that the foregoing is true and accurate based upon my personal knowledge.

EXECUTED this 30th day of October, 2020.

Michael L. Gannon

4

$$\boxed{\text{Exhibit 1}}$$

**Int. Cls.: 9 and 10**

**Prior U.S. Cls.: 21, 23, 26, 36, 38, 39 and 44**

**United States Patent and Trademark Office**

Reg. No. 3,398,329
Registered Mar. 18, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# 3M

3M COMPANY (DELAWARE CORPORATION)
3M CENTER, 220-9E-01
2501 HUDSON ROAD
ST. PAUL, MN 55144

FOR: FULL LINE OF PARTICULATE, OZONE, GAS, VAPOR, CHEMICAL, BIOHAZARD AND OTHER RESPIRATORS, INCLUDING FILTERING FACE-PIECE RESPIRATORS AND ELASTOMERIC FACE-PIECE RESPIRATORS, OTHER THAN FOR ARTIFICIAL RESPIRATION; FULL LINE OF SELF-RESCUE AND PROTECTION APPARATUS, NAMELY, OXYGEN BREATHING UNITS, SUPPLIED-AIR RESPIRATORS, AND POWERED AIR-PURIFYING SYSTEMS (PAPRS) RESPIRATORS; CARTRIDGES, FILTERS, AIR TANKS AND OTHER COMPONENT PARTS FOR RESPIRATORS AND BREATHING UNITS; DUST MASKS; FULL LINE OF PROTECTIVE EYEWEAR, NAMELY, SAFETY GOGGLES, EYEGLASSES AND EYE SHIELDS; FACE-PROTECTION SHIELDS; EAR PLUGS AND EAR MUFFS TO ATTENUATE SOUND AND PROTECT HEARING; HARD HATS AND OTHER PROTECTIVE HELMETS; WELDING HELMETS; AIR MONITORING DEVICES AND SENSORS FOR MEASURING GASES AND VAPOR CONCENTRATION LEVELS; GAS DETECTORS FOR DETECTING THE PRESENCE OF CARBON MONOXIDE AND OTHER GASES; THERMAL-IMAGING CAMERAS FOR USE BY FIREFIGHTERS AND FOR SEARCH AND RESCUE; ENVIRONMENTAL SAMPLING AND TESTING INSTRUMENTS AND EQUIPMENT, NAMELY, ELECTRONIC LUMINOMETERS, AND RELATED SOFTWARE, DOCKING STATIONS AND BATTERIES, FOR DETECTING, MEASURING AND ANALYZING CHEMICALS, BIOLOGICAL SUBSTANCES, FOOD RESIDUES AND MICROBES; MICROBIOLOGICAL AND CONTAMINANT-TESTING INSTRUMENTS AND EQUIPMENT, AND SOFTWARE RELATED THERETO, FOR DETECTING, MEASURING AND ANALYZING BACTERIA, INCLUDING PATHOGENS SUCH SALMONELLA AND LISTERIA, ALLERGENS, TOXINS, VITAMINS,

ANTIBIOTICS, AND OTHER ORGANISMS AND SUBSTANCES; DIAGNOSTIC APPARATUS FOR TESTING FOOD; LABORATORY EQUIPMENT AND SUPPLIES, NAMELY, TEST TUBES, TEST TUBE CAPS, DIP STICKS, RACKS, MICROTITRE PLATES AND TRAYS; SECURITY SCANNERS AND READERS FOR USE IN READING PASSPORTS AND OTHER FORMS OF IDENTIFICATION; ANTI-THEFT AND LIBRARY MATERIAL CHECK-OUT SECURITY SYSTEMS; RADIO FREQUENCY IDENTIFICATION (RFID) TAGS AND READERS; COMPUTER SOFTWARE FOR SUPPLY CHAIN MANAGEMENT FROM SOURCE TO CONSUMPTION, NAMELY, FOR COLLECTING, STORING AND MANAGING DATA, AND REPORTING, EXECUTING AND TRACKING, IN CONNECTION WITH ENTERPRISE RESOURCE PLANNING, SUPPLIER ENABLEMENT, MANUFACTURING, INVENTORY CONTROL AND WAREHOUSING, ORDER FULFILLMENT, SHIPPING, TRANSPORTATION AND DELIVERY; COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT AND MEDICAL RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND MEDICAL IMAGING SCANNERS AND RELATED SOFTWARE FOR CAPTURING IMAGES OF THE MOUTH AND TEETH FOR USE IN DENTISTRY, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

FOR: FULL LINE OF SURGICAL AND MEDICAL MASKS, RESPIRATORS AND FACE AND EYE SHIELDS FOR MEDICAL AND HEALTH-CARE RELATED PERSONNEL; FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS

AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS; AUTOCLAVES FOR MEDICAL USE; ORTHODONTIC APPLIANCES; DENTAL APPARATUS, NAMELY, INTRA-ORAL LIGHT SYSTEMS FOR CURING DENTAL MATERIALS, CERAMIC USED IN MAKING DENTAL CROWNS, BRIDGES AND OTHER RESTORATIVES; DENTAL INSTRUMENTS AND KITS COMPRISED OF SUCH INSTRUMENTS, NAMELY, MANDRELS, BURS, DISCS, CUPS, WHEELS, POINTS, BRUSHES AND ABRASIVE STRIPS USED TO GRIND, POLISH OR FINISH DENTAL RESTORATIVES; DENTAL INSTRUMENTS, NAMELY, SCISSORS, CRIMPING PLIERS, CONTOURING PLIERS AND IMPRESSION TRAYS; ELECTRONIC MIXERS FOR DENTAL COMPOUNDS; APPLICATORS AND DISPENSERS FOR DENTAL PRIMERS, CEMENTS, ADHESIVES, IMPRESSION MATERIALS AND RESTORATIVE MATERIALS; GLASS-FIBER POSTS USED IN DENTAL RESTORATIVE PROCEDURES; AND DENTAL PROPHYLAXIS ANGLES AND DENTAL PROPHYLAXIS CUPS FOR USE IN CLEANING TEETH AND DENTAL HYGIENE PROCEDURES, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 0-0-1960; IN COMMERCE 0-0-1960.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,237,168, 2,793,534 AND OTHERS.

SER. NO. 77-257,496, FILED 8-16-2007.

TARAH HARDY, EXAMINING ATTORNEY

Exhibit 2

| From: | TMOfficialNotices@USPTO.GOV |
|---|---|
| Sent: | Wednesday, April 2, 2014 11:00 PM |
| To: | trademarks@mmm.com |
| Subject: | Official USPTO Notice of Acceptance/Acknowledgement Sections 8 and 15: U.S. Trademark RN 3398329: 3M: Docket/Reference No. 34775 |

**Serial Number:** 77257496
**Registration Number:** 3398329
**Registration Date:** Mar 18, 2008
**Mark:** 3M
**Owner:** 3M Company

Apr 2, 2014

### NOTICE OF ACCEPTANCE UNDER SECTION 8

The declaration of use or excusable nonuse filed for the above-identified registration meets the requirements of Section 8 of the Trademark Act, 15 U.S.C. §1058. **The Section 8 declaration is accepted.**

### NOTICE OF ACKNOWLEDGEMENT UNDER SECTION 15

The declaration of incontestability filed for the above-identified registration meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065. **The Section 15 declaration is acknowledged.**

**The registration will remain in force for the class(es) listed below for the remainder of the ten-year period, calculated from the registration date, unless canceled by an order of the Commissioner for Trademarks or a Federal Court.**

**Class(es):**
009, 010

TRADEMARK SPECIALIST
POST-REGISTRATION DIVISION
571-272-9500

### REQUIREMENTS FOR MAINTAINING REGISTRATION

**WARNING: Your registration will be canceled if you do not file the documents below during the specified time periods.**

**Requirements in the First Ten Years**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between the 9th and 10th years after the registration date. See 15 U.S.C. §§1058, 1059.

**Requirements in Successive Ten-Year Periods**

**What and When to File:** You must file a declaration of use (or excusable nonuse) **and** an application for renewal between every 9th and 10th-year period, calculated from the registration date. See 15 U.S.C. §§1058, 1059.

**Grace Period Filings**

The above documents will be considered as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*\*\*The USPTO WILL NOT SEND ANY FURTHER NOTICE OR REMINDER OF THESE REQUIREMENTS. THE REGISTRANT SHOULD CONTACT THE USPTO ONE YEAR BEFORE THE EXPIRATION OF THE TIME PERIODS SHOWN ABOVE TO DETERMINE APPROPRIATE REQUIREMENTS AND FEES.\*\*\***

To view this notice and other documents for this application on-line, go to http://tdr.uspto.gov/search.action?sn=77257496. NOTE: This notice will only be available on-line the next business day after receipt of this e-mail.

Exhibit 3

Int. Cls.: **1, 3, 5, 9, 10 and 28**

Prior U.S. Cls.: **1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52**

## United States Patent and Trademark Office

Reg. No. 2,692,036
Registered Mar. 4, 2003

## TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANU-FACTURING COMPANY (DELAWARE COR-PORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICA-TOR STRIPS AND TAPE FOR USE WITH AUTO-CLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; INDI-CATOR STRIPS FOR TESTING GLUTARALDE-HYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDI-TIONS FOR USE IN SAFETY-MONITORING; INDI-CATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZA-TION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CON-TAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZA-TION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRO-DUCTS, NAMELY, CLEANSERS, CREAMS, LO-TIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRES-SINGS, MEDICATED COMPRESSES, TRANSPAR-ENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGI-CAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMI-CROBIAL SOLUTIONS; GAUZE; WOUND HEAL-ING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SUR-GICAL DISINFECTANTS AND PREPPING SOLU-TIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINES OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTROENCEPHALOGRAPH AND OTHER TYPES OF PA-

TIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,213,836, AND 1,234,260.

SER. NO. 76-137,885, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

Exhibit 4

Side - 1



**NOTICE OF ACKNOWLEDGEMENT
OF §15 DECLARATION
MAILING DATE: Mar 27, 2009**

The affidavit of incontestability filed in connection with the registration identified below meets the requirements of Section 15 of the Trademark Act, 15 U.S.C. §1065. The affidavit is acknowledged.

For further information about this notice, visit our website at: http://www.uspto.gov. To review information regarding the referenced registration, go to http://tarr.uspto.gov/.

**REG NUMBER:**   2692036
**MARK:**         **3M AND DESIGN**
**OWNER:**        **3M COMPANY**

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA 22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

James F. Voegeli
3M Innovative Properties Company
3M Center, 2501 Hudson Road
220 9E 01
St. Paul, MN 55144

<div align="right">

| Exhibit 5 |
| --- |

</div>

Int. Cls.: 1, 3, 5, 9, 10 and 28

Prior U.S. Cls.: 1, 4, 5, 6, 10, 18, 21, 22, 23, 26, 36, 38, 39, 44, 46, 50, 51 and 52

Reg. No. 2,793,534

**United States Patent and Trademark Office**    Registered Dec. 16, 2003

## TRADEMARK
### PRINCIPAL REGISTER



3M COMPANY (DELAWARE CORPORATION)
2501 HUDSON ROAD
3M CENTER
ST. PAUL, MN 55144 , BY MERGER, BY CHANGE OF NAME MINNESOTA MINING AND MANUFACTURING COMPANY (DELAWARE CORPORATION) ST. PAUL, MN 55144

FOR: ETHYLENE OXIDE FOR USE IN THE STERILIZATION OF MEDICAL, LABORATORY AND FOOD HANDLING INSTRUMENTS AND EQUIPMENT; CHEMICAL AND STEAM INDICATOR STRIPS AND TAPE FOR USE WITH AUTOCLAVES AND FOR TESTING THE STERILITY OF MEDICAL INSTRUMENTS AND EQUIPMENT; INDICATOR STRIPS FOR TESTING GLUTARALDEHYDE, ETHYLENE OXIDE AND OTHER CHEMICAL SOLUTIONS AND GASES; INDICATOR STRIPS FOR TESTING FOR BIOLOGICAL CONDITIONS FOR USE IN SAFETY-MONITORING; INDICATOR STRIPS FOR INDICATING TEMPERATURES FOR USE IN THE STERILIZATION AND SAFETY-MONITORING; ASSAY AND REAGENT TEST KITS AND COUNT PLATES FOR FIELD AND LABORATORY TESTING FOR E COLI, COLIFORM, AND OTHER BACTERIA OR CONTAMINANTS IN MEAT, DAIRY PRODUCTS AND OTHER TYPES OF FOOD, AND FOR TESTING TO DETECT YEAST AND MOLD; AND STERILIZATION MONITOR TESTING KITS CONTAINING INDICATOR STRIPS OR TAPE, REAGENTS AND RECORD KEEPING CARDS OR BINDERS FOR TESTING THE STERILITY OF SURGICAL AND MEDICAL INSTRUMENTS, EQUIPMENT, AND

SUPPLIES , IN CLASS 1 (U.S. CLS. 1, 5, 6, 10, 26 AND 46).

FIRST USE 11-0-1990; IN COMMERCE 11-0-1990.

FOR: NON-MEDICATED SKIN CARE PRODUCTS, NAMELY, CLEANSERS, CREAMS, LOTIONS, MOISTURIZERS, BARRIER CREAMS AND EMOLLIENTS, IN CLASS 3 (U.S. CLS. 1, 4, 6, 50, 51 AND 52).

FIRST USE 1-0-1996; IN COMMERCE 1-0-1996.

FOR: FULL LINE OF BANDAGES, DRESSINGS AND MEDICAL TAPES, NAMELY, ADHESIVE BANDAGES, BANDAGES FOR SKIN WOUNDS, SURGICAL BANDAGES, WOUND DRESSINGS, NON-STICK PADS FOR USE AS MEDICAL DRESSINGS, MEDICATED COMPRESSES, TRANSPARENT MEDICAL DRESSINGS, HYDROCOLLOID DRESSINGS, COLOSTOMY DRESSINGS, ULCER DRESSINGS, MEDICAL ADHESIVE TAPES, SURGICAL TAPES, AND WOUND AND SKIN CLOSURE ADHESIVE STRIPS WITH OR WITHOUT ANTIMICROBIAL SOLUTIONS; GAUZE; WOUND HEALING FILLERS WITH OR WITHOUT GAUZE; MEDICATED SKIN CARE PREPARATIONS; SURGICAL DISINFECTANTS AND PREPPING SOLUTIONS; MEDICATED ANTISEPTIC HAND WASHES; AND CULTURE MEDIA, BACTERIOLOGICAL MEDIA AND DIAGNOSTIC PREPARATIONS FOR CLINICAL OR MEDICAL LABORATORY USE, IN CLASS 5 (U.S. CLS. 6, 18, 44, 46, 51 AND 52).

FIRST USE 2-0-1991; IN COMMERCE 2-0-1991.

FOR: COMPUTER SOFTWARE FOR USE IN THE MEDICAL AND HEALTH CARE FIELDS FOR PROCESSING CLAIMS FOR REIMBURSEMENT, MAINTAINING PATIENT RECORDS, CODING AND GROUPING DATA USED FOR MEDICAL AND HEALTH CARE RESEARCH, AND FOR REPORTING HEALTH TRENDS AND OTHER MEDICAL DATA; AND FULL LINE OF RESPIRATORY FACE MASKS FOR FILTERING OUT GERMS, DUST AND POLLEN, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36 AND 38).

FIRST USE 5-0-1992; IN COMMERCE 5-0-1992.

FOR: FULL LINE OF ORTHOPEDIC CASTINGS TAPES, SPLINTS, REINFORCING STRIPS, ELASTIC BANDAGES, AND SUPPORT BANDAGES AND COMPRESSION WRAPS; COMPOSITE FABRICS CONTAINING FIBERGLASS AND RESINS FOR USE IN MAKING CASTS; PADDING FOR ORTHOPEDIC CASTS; ORTHOPEDIC CASTING TOOLS; FULL LINE OF STETHOSCOPES; FULL LINE OF SURGICAL MASKS, FACE SHIELDS, AND RESPIRATORY MASKS FOR MEDICAL PURPOSES; FULL LINE OF SURGICAL AND MEDICAL PROCEDURE DRAPES AND SHEETS; PATIENT ISOLATION DRAPES; MEDICAL-EQUIPMENT ISOLATION DRAPES; NON-ADHERENT SHEETING FOR BEDS, STRETCHERS AND EXAM TABLES; SURGICAL GOWNS; COMPRESSION BANDAGES; SURGICAL COMPRESSES; MEDICAL THERMOMETERS; FULL LINE OF MEDICAL ELECTRODES WITH OR WITHOUT CHEMICAL CONDUCTORS AND WET GELS FOR USE IN CARDIAC, ELECTROCARDIOGRAPH, ELECTRO-ENCEPHALOGRAPH AND OTHER TYPES OF PATIENT MONITORING; LEADS AND CONNECTORS FOR USE WITH MEDICAL ELECTRODES; DEFIBRILLATION PADS; ELECTROSURGICAL PADS, PLATES AND ADAPTERS TO REMOVE RF CURRENT FROM A PATIENT'S BODY DURING ELECTROSURGERY; THERMAL COLD AND HOT PACKS FOR FIRST AID AND THERAPEUTIC PURPOSES; EYE PATCHES FOR MEDICAL USE; PADDING FOR USE BETWEEN MEDICAL EQUIPMENT AND PATIENTS OR FOR ELEVATING OR POSITIONING LIMBS; POUCHES FOR HOLDING SURGICAL AND MEDICAL INSTRUMENTS; ISOLATION POUCHES AND BAGS FOR STORING ORGANS, TISSUE AND OTHER BODY PARTS FOR TRANSPLANTS AND LABORATORY TESTING; AND FULL LINE OF STERILIZED AND NON-STERILIZED FASTENING AND COMPRESSION SURGICAL WRAPS, IN CLASS 10 (U.S. CLS. 26, 39 AND 44).

FIRST USE 6-0-1990; IN COMMERCE 6-0-1990.

FOR: ATHLETIC TAPE AND ATHLETIC SUPPORT AND COMPRESSION WRAPS FOR KNEES, WRISTS, ANKLES, ELBOWS, LEGS AND ARMS, IN CLASS 28 (U.S. CLS. 22, 23, 38 AND 50).

FIRST USE 0-0-1993; IN COMMERCE 0-0-1993.

OWNER OF U.S. REG. NOS. 1,181,981, 1,234,260 AND OTHERS.

THE MATTER SHOWN IN BROKEN LINES INDICATES THE RELATIVE PLACEMENT OF THE MARK ON A TYPICAL PACKAGE FOR THE GOODS AND IS NOT CLAIMED AS A FEATURE OF THE MARK.

SER. NO. 76-138,263, FILED 9-29-2000.

ALICIA COLLINS, EXAMINING ATTORNEY

<div style="border: 1px solid black; display: inline-block; padding: 8px;">Exhibit 6</div>

Side - 1



**NOTICE OF ACCEPTANCE AND ACKNOWLEDGEMENT OF §§8 & 15 DECLARATION**
**MAILING DATE: Dec 21, 2009**

The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. §1058 and 1065. The combined declaration is accepted and acknowledged. The registration remains in force.

For further information about this notice, visit our website at: http://www.uspto.gov. To review information regarding the referenced registration, go to http://tarr.uspto.gov.

**REG NUMBER:** 2793534
**MARK:** 3M AND DESIGN
**OWNER:** 3M COMPANY

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

<div style="border: 1px solid black; display: inline-block; padding: 8px; text-align: center;">FIRST-CLASS MAIL<br>U.S POSTAGE<br>PAID</div>

James F. Voegeli
3M Innovative Properties Company
3M Center, 2501 Hudson Road
220 9E 01
St. Paul, MN  55144