# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| 3M COMPANY, | |
| Plaintiff, | Case No.: _____ |
| v. | Judge _____ |
| DRESIDE, NAVITELIA INDUSTRIES INC. | Magistrate Judge _____ |
| | **Jury Demand Endorsed Herein** |
| Defendants. | |

---

## DECLARATION OF MICHAEL L. GANNON

---

I, Michael L. Gannon, hereby declare and state as follows:

1. I am a resident of the State of Minnesota, over eighteen years of age, and if called to testify to the matters contained herein could do so competently and based upon my personal knowledge.

2. I am Senior Trademark Counsel for 3M Innovative Properties Company ("3M"). The information set forth herein is based on my personal knowledge obtained through the course of my duties at 3M. The information set forth herein is also based on my review of records, documents (including electronic records), and photographs maintained in the regular course of 3M's business, and the Complaint in this lawsuit.

3. I submit this declaration in support of 3M's request for a temporary restraining order, and preliminary injunction against Defendants Dreside and Navitelia Industries Inc. ("Defendants") in the above-captioned action.

4. For decades, 3M has been a leading provider of personal protective equipment for healthcare professionals, industry workers and the public. Indeed, 3M is a leading manufacturer of N95 respirators, and has sold N95 respirators in the United States under the 3M brand name for decades.

5. 3M has spent millions of dollars in advertising, marketing, and promoting goods and services under the 3M Marks. Goods sold under the 3M Marks, including 3M's N95 respirators, generate billions of dollars in annual revenue. The 3M Marks are recognized

and well-known in households around the U.S. 3M has been the exclusive source of goods and services offered under the 3M Marks for decades.

6. Since the COVID-19 outbreak began, the public has become familiar with 3M as a manufacturer of the N95 respirators and other equipment essential to protecting healthcare personnel and workers from exposure to airborne particles, including viruses like COVID-19.

7. Over the past century, 3M has invested hundreds of millions of dollars in advertising, promoting, offering for sale, and selling its vast array of goods and services under its standard-character "3M" and 3M design mark (together, the "3M Marks"). During this period, 3M's goods and services offered under its 3M Marks have been the subject of widespread, unsolicited media coverage and critical acclaim. Goods and services offered under 3M Marks also enjoy enormous commercial success, with annual revenues in the billions of dollars.

8. To strengthen 3M's common-law rights in and to its famous 3M Marks, 3M has obtained numerous federal trademark registrations, including, without limitation: (i) U.S. Trademark Reg. No. 3,398,329, which covers the standard-character 3M mark in Int. Classes 9 and 10 for, inter alia, respirators (the "'329 Registration"); (ii) U.S. Trademark Reg. No. 2,692,036, which covers the 3M logo for, *inter alia*, a "full line of surgical masks, face shields, and respiratory masks for medical purposes" (the "036 Registration"); and (iii) U.S. Trademark Reg. No. 2,793,534, which covers the 3M design mark in Int. Classes 1, 5, and 10 for, inter alia, respirators (the "'534 Registration").

9. Attached hereto as **Exhibit 1** is a true and correct copy of the '329 Registration.

10. Attached hereto as **Exhibit 2** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '329 Registration, which was issued by the United States Patent and Trademark Office (the "PTO") pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

11. Attached hereto as **Exhibit 3** is a true and correct copy of the '036 Registration.

12. Attached hereto as **Exhibit 4** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '036 Registration, which was issued by the United States Patent and Trademark Office (the "PTO") pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

13. Attached hereto as **Exhibit 5** is a true and correct copy of the '534 Registration.

14. Attached hereto as **Exhibit 6** is a true and correct copy of the Notice of Acknowledgement of 3M's Declaration of Incontestability of the '534 Registration, which was issued by the PTO pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065.

15. On October 12, 2020, 3M received an inquiry from a consumer who had purchased purported 3M 1860 N95 respirators from Defendants through their website, asking whether

Defendants are authorized distributors of 3M.  3M confirmed to the consumer that Defendants are not an authorized distributor of 3M and asked the consumer to provide photos of the product he purchased from Defendants, which the consumer provided.  Upon review of the photos supplied by the consumer, 3M determined that the 3M 1860 N95 respirators sold to the consumer by Defendants are counterfeit.

16. On October 20, 2020, 3M employed a third party investigator to purchase products through Defendants' website.

17. On October 26, 2020, the third party investigator employed by 3M received from Defendants products alleged to be 3M 1860, 3M 1860S, 3M 8210 N95 respirators.

18. 3M has determined that the 3M 1860S N95 respirators purchased by its third party investigator from Defendants are counterfeit.

19. Defendants are not, and have never been, an authorized distributor, vendor, or representative of 3M's products.  Defendants also do not have, and have never had, an association or affiliation with 3M.  3M does not – and will not – condone individuals or entities deceptively trading off the fame and goodwill of the 3M name and marks for personal gain.  This is particularly true against those who seek to exploit the surge in demand for 3M-brand products during the COVID-19 global pandemic, which already has claimed more than 200,000 lives in the United States and more than a million lives worldwide.

20. Defendants' actions have caused irreparable harm to the 3M brand and have put the public at risk.

21. Accordingly, 3M commenced an action against Defendants on October 30, 2020, asserting claims under federal and Florida law for trademark counterfeiting, trademark infringement, unfair competition, false association, false endorsement, false designation of origin, false advertising, and deceptive acts and business practices.

22. As set forth in 3M's Complaint, 3M can demonstrate that Defendants used a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.

23. The harm to 3M of denying 3M's request for injunctive relief outweighs the harm to the legitimate interests of Defendant.

24. It is my sincere belief based on my knowledge of the facts associated with Defendant's actions that Defendants will destroy, move, hide, or otherwise make the products inaccessible to the court, if 3M were to notify Defendants of the court proceedings.

I declare under penalty of perjury of the laws of the United States and the State of Florida that the foregoing is true and accurate based upon my personal knowledge.

EXECUTED this 30th day of October, 2020.

_____

Michael L. Gannon

4