UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 20-24489-CV-SCOLA/GOODMAN

3M COMPANY,

      Plaintiff,

v.

DRESIDE AND NAVITELIA INDUSTRIES
INC.,

      Defendants.
_____/

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

Defendants, DRESIDE AND NAVITELIA INDUSTRIES INC., by and through undersigned counsel, file its Response in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Supporting Memorandum of Law and states as follows:

    **I.  INTRODUCTION**

Plaintiff, 3M COMPANY ("3M"), filed its Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") [ECF No. 12] to prevent Defendants DRESIDE AND NAVITELIA INDUSTRIES INC. (collectively "Defendants") from selling 3M brand N95 respirators (the "masks") and 3M products during a time when the world is facing the largest public health crisis in modern history due to COVID-19. These masks are in in short supply and in high demand, and are desperately needed to protect medical professionals, first responders, and the public at large. [ECF No. 12, p. 1]. "As a leading provider of [masks], 3M is committed to getting its [masks] in the hands of those who need it most in these unprecedented times." *Id.* Plaintiff's

1

Motion is falsely based on the assumption that Defendants *knowingly* and *intentionally* sold *counterfeit* 3M masks to unwitting companies and consumers, and fails to prove a majority of the factual allegations Plaintiff relies upon in support of its claim. Plaintiff will not be able to prove these allegations at the subsequent hearing on the Motion seeking a preliminary injunction because there is no evidence that the allegations are true—and for good reason: they aren't. Plaintiff has further failed to state any viable claim against Defendants, and Plaintiff cannot establish the elements necessary to support the entry of a preliminary injunction.

Moreover, Plaintiff's Motion attempts to restrict Defendants ability to offer its customers authentic 3M products in the midst of a pandemic when masks are scarce. This is nothing more than a thinly-disguised effort to stop legitimate businesses from reselling Plaintiff's authentic masks during a global health emergency. By using its significant financial resources to eliminate competition from resellers of its masks, Plaintiff will gain the inequitable advantage of monopolizing the secondary market for its products.

## II.   BACKGROUND FACTS

The background facts are largely set forth in the Declaration of Guillermo Lopez, a principal of Dreside and Navitella Industries, Inc., attached hereto **Exhibit 1**. Defendants contracted with an overseas supplier ("Supplier") to purchase, what was represented to Defendants by Supplier, as genuine 3M N95 respirators (the "masks"). (Ex. 1, ¶ 8). The suppliers represented to Defendants that they had a contractual right to purchase the masks from an authorized 3M distributor and warranted to Defendants in writing its masks were genuine 3M masks, attached hereto **Exhibit 2**.

The only evidence offered by Plaintiff to prove its allegations is found in the Declaration of Michael Gannon, Senior Trademark Counsel for 3M, which states:

> On October 12, 2020, 3M received an inquiry from a consumer who had purchased purported 3M 1860 N95 respirators from Defendants through their website, asking whether Defendants are authorized distributors of 3M. 3M confirmed to the consumer that

> Defendants are not an authorized distributor of 3M and asked the consumer to provide photos of the product he purchased from Defendants, which the consumer provided. Upon review of the photos supplied by the consumer, 3M determined that the 3M 1860 N95 respirators sold to the consumer by Defendants are counterfeit.

[ECF No. 12-1, , ¶ 15]. Defendants never intended to convey that they, themselves, were directly affiliated with 3M. Moreover, Defendants were not aware that the masks sold to them were counterfeit.

In response to this, the Court entered an Order granting 3M's Ex Parte Motion For Temporary Restraining Order (the "TRO") which prohibits Defendants from selling any goods using the "3M" trademarks, *including* Plaintiff's 3M-brand masks, and further, prohibits Defendants from holding themselves out to consumers and/or the public as being authorized by 3M as an approved or contracted distributor of 3M-brand products. [ECF No. 15].

Defendants are not contesting the TRO, and in fact, have already complied and have every intention of continuing to comply with the restrictions set forth in the TRO. Defendants prioritize maintaining a good relationship with 3M and are working diligently and in good faith to comply with the TRO. Defendants have removed all products bearing the 3M trademarks from its website and Defendants are no longer selling any goods bearing the 3M trademarks. Therefore, Defendants respectfully move this Court to dissolve this order.

However, Defendants object to the TRO being converted to a preliminary injunction in this action because Defendants have complied fully with the existing TRO and wish to maintain their business relationship with 3M. Additionally, as set forth in further detail below, Defendants do not believe that Plaintiff can satisfy the elements of a preliminary injunction, in particular the requirement of proving a substantial likelihood of success on the merits or the existence of irreparable harm. If any preliminary injunction is issued, it should be narrowly limited to the language in the TRO prohibiting Defendants from engaging in any representations or sales of

products *falsely bearing the 3M trademarks*, but exclude any language restricting Defendants right to freely contract with 3M directly to sell genuine 3M masks or becoming an authorized dealer of genuine 3M masks.

Defendants have relied on its verbal and written communications from its suppliers in determining that the suppliers were a legitimate source of 3M masks. Defendants have never *intended* or *knowingly* made any misrepresentations about its ability to deliver genuine 3M masks. (Ex. 1, ¶ ¶ 7-11).

### III. ADDITIONAL DEVELOPMENTS SINCE THE TRO

As previously discussed, Defendants wish to maintain their business relationship with 3M and have complied fully with the existing TRO by discontinuing the sale of and removing all products bearing the 3M trademarks from its website. Thus, not only is there no need for any part of the TRO to live on, there should be no need for the preliminary injunction. Should the Court decide to enter the preliminary injunction, it should exclude the language restricting the right s of both 3M and Defendants to contract freely with each other in the open marketplace, and further, exclude language restricting Defendants ability to become legally authorized dealers of 3M masks.

Defendants never *intentionally* or *knowingly* sold or attempted to sell counterfeit masks. Defendants' Supplier represented and warranted that all masks purchased were bona-fide 3M masks and not a forgery or counterfeit. (*See* Ex. 2) Defendants took reasonable precautions to ensure that it did not put mislabeled counterfeit 3M masks into the stream of commerce. Defendants conducted due diligence through multiple phone conversations, internal research, and by requiring Supplier to provide Defendants with a 3M authorization certificate verifying it procured the masks from "an official representative of 3M . . . for the purpose of promoting, distributing and sales of 3M Healthcare Surgical and Infection Prevention Medical devices and products." (Ex. 1, ¶ ¶ 7-14). Therefore, Defendants' representations to its potential customers that it is selling or distributing

genuine 3M masks is a true statement.

Defendants have relayed this information to 3M's counsel in an effort to maintain a positive relationship with Plaintiff. The names of all of Defendants' suppliers have been provided to 3M under a confidential disclosure requested by Plaintiff (the "Disclosure"), attached hereto as **Exhibit 3**. Defendants have fully cooperated with 3M's requests in an attempt to amicably resolve this matter and preserve its relationship with 3M. Defendants fully relied upon its suppliers' representations about the validity and legitimacy of the 3M masks it sold to Defendants. (Ex. 1, ¶ 14).

3M obviously has resources that far exceed the resources of Defendants. Now that 3M has the information supplied by Defendants in the Disclosures, 3M may easily utilize its resources to pursue legal action against the larger and more menacing culprits in the counterfeit scheme: the suppliers. These suppliers are misrepresenting their inventory as genuine 3M masks to dealers, many of whom are "mom and pop shops," such as Defendants in this instant action, who were unknowingly duped into buying counterfeit 3M masks and reselling them as genuine 3M masks.

Defendants have repeatedly advised 3M's counsel, and advise this Court, that it has no desire to sell counterfeit goods, as its own money and reputation are at stake. At this point, it appears 3M's legal filings are designed to defeat Defendants' ability to continue its business as a reseller of 3M products, thereby shutting down legitimate competition rather than any real concern for counterfeit masks being sold. 3M, by its own admission, stated that "due to the current health crisis the COVID pandemic has created, the growing demand for masks exceeds the supply." [ECF No. 12, p. 1). For 3M to restrict Defendants ability to offer its customers authentic 3M masks in the midst of a pandemic when masks are in high demand and in short supply, regardless of whether Defendants are in the brand's authorized distribution network, would be nothing more than a thinly-veiled effort to stop legitimate businesses from reselling their authentic masks, prevent customers

from buying and having access to those masks during a global health pandemic, and is counter-productive to public policy.

3M has not shown that it has been harmed in any way by Defendants' behavior. Defendants have cooperated fully with 3M by immediately removed all suspect 3M masks from Defendants website and disclosed to 3M's counsel all distributors it purchased the masks from, the certificates of authenticity of verified 3M products that the suppliers provided Defendants, a list of all customers Defendants sold allegedly counterfeit masks, the quantity, and the price. (*See* Ex. 3). Moreover, Plaintiff cannot show that Defendants *knowingly* attempted to sell or ever sold counterfeit 3M masks. Therefore, the TRO should be allowed to expire and 3M's Motion for a preliminary injunction should be denied in its entirety.

### IV. PLAINTIFF CANNOT ESTABLISH THE ELEMENTS NECESSARY FOR PRELIMINARY INJUNCTIVE RELIEF.

A district court may grant a preliminary injunction only if the movant establishes the following: "(1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest." *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008) (quoting, *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.,* 299 F.3d 1242, 1246 (11th Cir.2002)); *Nitro Leisure Products, LLC v. Ascushnet Co.,* 341 F.3d 1356 (Fed. Cir. 2003).

#### A. PLAINTIFF HAS FAILED TO SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiff has filed an eight count Complaint asserting the following causes of action: Trademark Counterfeiting under the Lanham Act; Trademark Infringement under the Lanham Act; Unfair Competition, False Endorsement, False Association, and False Designation of Origin under

the Lanham Act; Trademark Dilution under the Lanham Act; False Advertising Under the Lanham Act; Trademark Infringement Under Fla. Stat. §495.131; Dilution under Fla. Stat. §495.151; and Unfair Competition under Florida Common Law.

The key in determining whether a preliminary injunction should be issued on a trademark infringement claim is whether a plaintiff is likely to prevail on the merits. *Glen Raven Mills, Inc. v. Ramada Int'l, Inc.,* 852 F. Supp. 1544, 1547 (M.D. Fla. 1994) (citing *Zardui-Quintana v. Richard,* 768 F.2d 1213, 1216 (11th Cir. 1985)).

Plaintiff's Complaint fails to state a cause of action for any of the above stated claims. Therefore, Plaintiff cannot establish a likelihood of success on the merits. Even if Plaintiff's Complaint were able to state a claim for one or more of the alleged causes of action, Plaintiff has failed to establish the facts necessary to support a finding of likelihood of success on the merits.

To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the Defendants infringed a registered trademark in violation of 15 U.S.C. § 1114(1)(a); and (2) the Defendants "'*intentionally* used a mark, *knowing* such mark is a counterfeit mark.'" *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994) (quoting 15 U.S.C. § 1117(b)) (emphasis added). The analysis of Florida statutory and common law claims is the same as under federal trademark infringement claims. *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003) (internal citation omitted). *See also Victoria's Cyber Secret Ltd. P'ship* v. *V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1355-56 (S.D. Fla. 2001).

The touchstone for an infringement action is whether there exists a "likelihood of confusion" between the protected mark and the allegedly infringing mark. *Edge Systems LLC v. Aguila,* 186 F. Supp. 3d 1330, 1348 (S.D. Fla. 2016) (internal citation omitted). Plaintiff's claims under the Lanham Act fail because Defendants, based on the representations made by its supplier, believed that the 3M masks Defendants purchased and were selling to its customers were authentic, and therefore using

7

the 3M mark in conjunction with the sale of what Defendant believed to be genuine 3M masks. Defendants have never used 3M's trademark for anything other than to represent that it was selling what Defendants believed, in good faith, to be genuine 3M branded masks. Plaintiff fails to sufficiently allege that Defendants *intentionally* used the 3M mark *knowing* the masks it purchased from its supplier were counterfeit. Further, no sales were ever closed based on the fact that Defendants were an authorized distributor of 3M. Thus, no actual confusion has even been shown.

The legal standard for unfair competition, which includes false designation of origin and trademark infringement under both the Lanham Act and common law has been held to be essentially the same. *Chanel, Inc. v. Italian Activewear of Florida, Inc.,* 931 F.2d 1472, 1475 n. 3 (11th Cir.1991). Further, the federal Lanham Act analysis governs the analysis of claims for deceptive trade practices in violation of Florida law. *See Custom Mfg. and Engineering, Inc. v. Midway Services, Inc.*, 508 F.3d 641, 652-53 (11th Cir. 2007) (internal citation omitted) (finding that Florida statutory and common law claims involve the same dispositive questions as the federal Lanham Act, and the court's analysis under the Lanham Act will dispose of the state law issues).

Similarly, Plaintiff's trademark dilution claims are not supported by the evidence. 3M has failed to effectively establish that its mark is famous which is an element of a trademark dilution claim. While the 3M brand may be well known in the industrial and medical community, and it may have grown in recognition during the global pandemic, it does not rise to the level of a famous mark. A mark is considered famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. 15 U.S.C. § 1125(c)(2)(A). Trademark dilution claims are limited to "truly famous marks such as Budweiser beer, Camel cigarettes, and Barbie dolls." *Brain Pharma, LLC,* 858 F. Supp. 2d at 1357 (*quoting, Dahon N. Am., Inc. v. Hon,* 2012 WL 1413681, at *9 (C.D.Cal. 2012).

Plaintiff has failed to show a substantial likelihood of success on the merits of its federal

8

trademark and unfair competition claims. Because Plaintiff's state claims are subject to the same pleading and proof standard as its federal claims, Plaintiff's state claims must also fail. *See, Int'l Univ. Bd. of Trustees,* 91 F.Supp. 3d at 1288; *see also Brain Pharma, LLC,* 858 F. Supp. 2d at 1359.

### B.  PLANTIFF HAS FAILED TO SHOW IRREPARABLE HARM

Plaintiff's Motion states that the TRO and a subsequent preliminary injunction are necessary to prevent Defendant from continuing to fraudulently induce consumers into buying counterfeit masks during a global pandemic. However, Plaintiff has failed to provide, nor can Plaintiff provide, any evidence that Defendants ever *knowingly* sold or *knowingly* attempted to sell a counterfeit mask. To the contrary, Defendants have provided evidence that its supplier was providing genuine 3M masks, with accompanying representations and warranties. (*See* Ex. 2).

Plaintiff insists in its Motion that "3M will suffer immediate and irreparable injury if Defendants are permitted to further use 3M marks to sell counterfeit goods to consumers." [ECF No. 12, P. 2] However, Plaintiff has no evidence that the masks Defendants were selling are counterfeit. Moreover, Plaintiff has no evidence that Defendants were *intentionally and knowingly* selling counterfeit masks. In fact, all evidence suggests the contrary, that once Defendants were put on notice that the masks they were selling were allegedly counterfeit, Defendants immediately removed all suspect 3M masks from their website and disclosed to 3M's counsel all distributors it purchased the masks from, the certificates of authenticity of verified 3M products that the suppliers provided Defendants, a list of all customers Defendants sold allegedly counterfeit masks, the quantity, and the price. (See Ex. 3). Defendants have been completely transparent with Plaintiff in this process in order to rectify any wrongdoing and maintain goodwill with 3M.

Further, 3M has not offered any evidence that suggests Defendants limited sale of masks that were not genuine 3M products has caused any irreparable injury to 3M. "To establish irreparable injury, a movant must show that it will suffer an injury that cannot be adequately

9

compensated if, at some later point in time, it prevails on the merits of the case." *Glen Raven Mills, Inc.* 852 F. Supp. at 1547. Once Defendants were made aware of the alleged counterfeits, they immediately discontinued sales and removed them from their website and furnished all sales and distributor records to 3M without issue. Plaintiff has failed to establish any irreparable injury in the instant action.

### C. THE HARM SUFFERED BY DEFENDANTS IN THE EVENT OF AN INJUNCTION EXCEEDS ANY HARM TO PLAINTIFF.

Defendants have already been damaged by the allegations brought against it in this lawsuit. If Defendants are subject to a broad preliminary injunction such as the one requested by Plaintiff that would prohibit Defendants from offering for sale or selling genuine 3M products, it would essentially result in putting Defendants out of business. Moreover, such a prohibition goes against 3M's mission of supplying healthcare professionals, frontline workers, and the public at large, adequate protection against the spread of the COVID-19 virus. So long as Defendants are not knowingly offering or selling counterfeit products, there is no harm to Plaintiff.

### D. AN INJUNCTION AGAINST DEFENDANTS DOES NOT SERVE THE PUBLIC INTEREST

All parties agree and understand that 3M N95 masks are in high demand and are needed by healthcare professionals, frontline workers, and the public at large. If Defendants are able to secure genuine 3M masks for health care facilities professionals and the general public, then preventing Defendants from selling and delivering these products does a disservice to the public. Just because 3M is the manufacturer of the products does not mean it can control the secondary market or every sale of its product. Any such control would constitute a monopoly, is illegal, and does not serve the public interest.

## V. CONCLUSION

Plaintiff has failed to establish entitlement to the overly broad preliminary injunction it seeks in this action. Plaintiff cannot establish the likelihood of success on the merits of its trademark and unfair competition claims as set out above. Therefore, for all of the foregoing reasons, Plaintiff's Motion should be denied by this Court.

Date:  December 14, 2020                                        Respectfully submitted,

                                                                By: /s/Antonio G. Hernández
                                                                    Antonio G. Hernández, Esq.
                                                                    Florida Bar No. 0164828
                                                                    Hern8491@bellsouth.net
                                                                    ANTONIO G HERNÁNDEZ PA
                                                                    2525 Ponce De Leon Boulevard
                                                                    Coral Gables, Fl 33134
                                                                    Tel:  (305) 282-3698

                                                                    *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                                By: /s/Antonio G. Hernández
                                                                    Antonio G. Hernández, Esq.
                                                                    Florida Bar No. 0164828

**SERVICE LIST**

*3M Company v. Dreside and Navitelia Industries Inc.,*
Case No. 20-24489-CV-SCOLA/GOODMAN
United States District Court, Southern District of Florida

Jason Mehta, Esq.
Florida Bar No. 106110
jmehta@bradley.com
Timothy Allen Andreu, Esq.
Florida Bar No. 443778
tandreu@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
Tel:    (813) 559-5500
Fax:    (813) 229-5946

James William Manuel, Esq. (*pro hac vice*)
wmanuel@bradley.com
BRADLEY ARANT BOULT CUMMINGS LLP
188 E. Capitol Street, Suite 1000
Jackson, MS 39201
Tel:    (601) 948-8000

*Counsel for Plaintiff, 3M Company*

***Via CM/ECF***

Antonio G. Hernández, Esq.
Florida Bar No. 0164828
Hern8491@bellsouth.net
ANTONIO G HERNÁNDEZ PA
2525 Ponce De Leon Boulevard
Coral Gables , Fl 33134
Tel:    (305) 282-3698

*Counsel for Defendants Dreside and Navitelia Industries Inc.*

***Via CM/ECF***